UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:15-cv-00106-MOC

| | |
|---|---|
| **ORRIN L. JACKSON,** ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| Vs. ) | ORDER |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Respondent. ) | |

**THIS MATTER** is before the court on review of the petitioner's Motion to Vacate, Set Aside, or Correct a Sentence (#1) (as amended) filed pursuant to 28 U.S.C. § 2255. After conducting an initial review, the court directed the respondent to Answer or otherwise respond to the petition. Within the time provided, the respondent filed its Response and therein moved to dismiss the petition. Exhibits were filed in support of such motion.

After initial consideration of the Response, the court entered an Order (#12) advising petitioner that evidentiary materials had been submitted and that he too had the right to submit evidentiary materials to the court including his own affidavit, all in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Further, the court advised petitioner that the court would review his Reply and any exhibits to determine whether an evidentiary was necessary.

The court has conducted such review of petitioner's (#20) Reply (#20 "Traverse"). Among the exhibits attached to the Reply is petitioner's own Declaration (#20-1, at 1-2). Petitioner avers therein that on March 25, 1989, he was not present when Elliott Alexander was shot and was not involved in any manner and did not know that he would be shot on such date.

For the reasons more fully discussed below, such declaration does not raise a genuine issue of material fact which would warrant an evidentiary hearing.

It appearing that the issues have been fully briefed, the court enters the following findings, conclusions, and Order denying the petition.

## FINDINGS AND CONCLUSIONS

### I. Underlying Criminal Conduct

The following factual background is drawn from the evidence presented at trial and is supported by the excerpts from the Joint Appendix submitted by the parties on appeal from this court's original Judgment. See Joint Appendix (#8-1).

Between 1988 and 1990, petitioner was the enforcer of a drug-trafficking organization which sold crack cocaine in Charlotte, North Carolina. The organization was led and managed by petitioner's brother Cecil Jackson and their cousin Eric Whitener. The leaders would cook the powder cocaine into crack and give the organization's street dealers 25 bags to sell at $20 apiece. The evidence adduced at trial indicated that all members of the organization were armed. The evidence also indicated that petitioner, in his role as enforcer, had instructed gang members to only shoot others below the waist as it was his belief that such was only a misdemeanor. However, after a number of street battles with other armed rival gangs, petitioner directed members to shoot to kill.

One street-level dealer of the Jackson-Whitener gang was Elliot Alexander. Petitioner and Cecil Jackson discovered, however, that while plying the gang's wares, Mr. Alexander smoked $500 worth of their crack cocaine. They threatened to kill Mr. Alexander if did not pay for the product he smoked. Having not paid up, petitioner, Cecil Jackson, Eric Whitener and

other members of the gang in a convoy of cars opened fire on Mr. Alexander with an Uzi machine gun, missing him completely, but wounding a third party. Mr. Alexander fled the scene, but was shot in the back by a 9mm round and in his leg by a .25 caliber round.

Later that same year, this same trio accompanied by other gang members shot non-compliant street dealers and drug buyers in a similar fashion. In late October 1989, they shot at Willie Jeter, a rival gang member. In December 1989, Whitener ordered the shooting of drug dealer Fred Thomas after he failed to pay a drug debt and later pointed a firearm at Deborah Small when she told him that she did not want the gang to sell cocaine from her house. On December 23, 1989, the trio and another gang member participated in a drive-by shooting into the house of a rival gang member, which he shared with his mother. Petitioner shot a 9mm Uzi into the house and a car parked in the driveway, while Whitener fired a 9mm pistol and Cecil Jackson attempted to fire a 12 gauge shotgun.

Such conduct continued into early 1990. On January 7, 1990, the trio and other gang members lured a rival gang member to an area where they were waiting in ambush. The gang members carried numerous weapons, including two 12 gauge shotguns, several pistols, a .25 caliber automatic, and a .22 caliber Uzi. When the rival gang member's car was spotted, two members of the Jackson-Whitener gang opened fire.

The next day, petitioner and other gang members were traveling in a van when they noticed police officers following them. Petitioner was driving the van, and upon realizing that officers were following him, petitioner sped up and turned down a street to enable Pernell Camps, another gang member, to throw two-and-a-half ounces of crack, with a street value of

between $9,000 and $13,000, out of the window. Officers stopped the van and seized numerous firearms.

## II.     Indictment, Trial, and Sentence

In 1990, petitioner, Cecil Jackson, and Eric Whitener, and seven other gang members were charged with conspiracy to possess with intent to distribute crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count One).[1]

Petitioner was also charged with: (1) one count of possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count Twenty-One); (2) one count of possession with intent to distribute crack cocaine and aiding and abetting the same, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count Thirty); and (3) 14 counts of using or carrying a firearm during and in relation to a drug-trafficking offense and aiding and abetting the same, in violation of 18 U.S.C. §§ 924(c) and 2 (Counts Five, Eighteen, Twenty-Two, Twenty-Four through Twenty-Six, Twenty-Eight, Twenty-Nine, and Thirty-One through Thirty-Five).

Petitioner's case was tried before a jury, at the conclusion of which the jury was instructed that in order to find the petitioner guilty on an aiding and abetting theory, the jury had to find each element of the substantive offense beyond a reasonable doubt "and that the [petitioner] willfully participated in its commission." J.A. at 1712-13. The jury found petitioner guilty of all offenses with which he was charged, except one of the § 924(c) charges (Count Eighteen) and one possession-with-intent-to-distribute charge (Count Thirty).

---

1  The Grand Jury alleged 11 specific instances of possession with intent to distribute crack cocaine by members of the conspiracy, as well as 19 specific instances of firearm possession, carrying, or use by members of the conspiracy with the purpose of protecting the gang's crack cocaine enterprise, to intimidate rival drug traffickers, to enforce the gang's collection efforts against dealers who sold crack on behalf of the gang, and to punish dealers who failed to pay their debts.

This court (Potter, J.) sentenced petitioner to 1,180 months in prison. Petitioner appealed, and the Court of Appeals for the Fourth Circuit affirmed his convictions and sentence. <u>United States v. Jackson</u>, 1992 WL 4248, at *3-*6 (4th Cir. Jan. 14, 1992).

## III.    Collateral Relief

On April 28, 1997, petitioner filed a motion to vacate under 28 U.S.C. § 2255. <u>Jackson v. United States</u>, No. 3:97cv245 (W.D.N.C.). Petitioner later moved to dismiss his motion to vacate, and this court (Potter, J.) granted petitioner's motion with prejudice. Ten years later, petitioner sought to vacate the Order dismissing his motion to vacate with prejudice, and this court (Whitney, J.) granted that motion on July 13, 2009, stating that the court's earlier Order dismissing petitioner's motion to vacate with prejudice was void. <u>Id.</u> at Order (#15). Thus, such earlier filed petition does not constitute a first petition as it was dismissed without prejudice.

On March 15, 2015, petitioner filed the instant motion to vacate, which the court determines is a first petition within the meaning of the AEDPA.

## IV.    Discussion

### A.    Timeliness of the Petition

Despite the passage of some 23 years since the Judgment became final, petitioner argues that this petition is timely under the 28 U.S.C. § 2255(f)(3) exception to the one year filing requirement of § 2255(f)(1). In relevant part, those provisions provide, as follows:

> (f) A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of--
> ***
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review[.]

18 U.S.C. § 2255(f)(3). As the Supreme Court made clear in Dodd v. United States, 545 U.S. 343 (2005), where it "decides a case recognizing a new right, a federal prisoner seeking to assert that right will have one year from [the] Court's decision within which to file his § 2255 motion." Id. at 358. In this case, petitioner has asserted claims under Bailey v. United States, 516 U.S. 137 (1995), Rosemond v. United States, ___ U.S. ___, 134 S.Ct. 1240 (2014), and the Double Jeopardy Clause of the Fifth Amendment.

As to his Bailey claims, those claims are time barred as they no longer qualify under the §2255(f)(3) exception, because they were not raised within one year. The AEDPA established a one-year grace period, ending on April 24, 1997, in which a defendant could file a § 2255 motion based on claims existing on the date of its enactment, which was April 24, 1996. Inasmuch as Bailey was a 1995 decision, petitioner had up to April 24, 1997, to submit any Bailey claims. Those claims will, therefore, be dismissed with prejudice as time barred.

As to petitioner's Rosemond claim, that claim is not time barred. Rosemond, supra. In that 2014 decision, the Supreme Court held that to prove a defendant aided and abetted the use of a firearm during a crime of violence or a drug trafficking crime under 18 U.S.C. § 924(c), the defendant must have had advance knowledge that a gun would be used in the underlying drug trafficking offense or crime of violence. Id., 134 S.Ct. at 1241. Despite a number of cases finding otherwise,[2] the government concedes that Rosemond is retroactive because it announced a new substantive rule, which includes "decisions that narrow the scope of a criminal statute," Schriro

---

2   See United States v. Davis, 750 F.3d 1186, 1192–93 (10th Cir. 2014) (finding that"[a]fter Rosemond, a jury instruction on aiding and abetting § 924(c) should address the defendant's advance knowledge of the gun."); Gentile v. Fox, 2014 WL 3896065, *8 (C.D.Cal. July 11, 2014) (finding that "there is no indication in the decision that the rule declared therein [Rosemond] regarding what it takes to aid and abet a § 924(c) offense would apply retroactively on collateral review.").

v. Summerlin, 542 U.S. 348, 351 (2004), by holding that the statute "does not reach certain conduct," Bousley v. United States, 523 U.S. 614, 620 (1998), or by prohibiting a certain category of punishment for a class of defendants because of their status or offense. O'Dell v. Netherland, 521 U.S. 151, 157 (1997). This court agrees and will allow petitioner's Rosemond claim to move forward to a merits review, infra.

  B.  **Consideration of Petitioner's Rosemond Claim**

    1.  **The New Substantive Rule**

In Rosemond, the Supreme Court held that in order to prove that a defendant aided and abetted the offense of using or carrying a firearm during and in relation to a crime of violence or drug-trafficking crime, the government must show "that the defendant actively participated in the underlying drug trafficking or violent crime with advance knowledge that a confederate would use or carry a gun during the crime's commission." Rosemond, 134 S. Ct. at 1243. The Supreme Court further held that a person is liable under 18 U.S.C. § 2 for aiding and abetting an offense if he or she (1) takes an affirmative act in furtherance of that offense (2) with an intent of facilitating the offense's commission. Id. at 1245.

In the context of § 924(c), a defendant need only take an affirmative act in furtherance of either the use of a firearm or the commission of a drug-trafficking or violent offense. Id. at 1247. It is not necessary that the defendant's acts "advance each element of the offense; all that matters is that they facilitate one component." Id. With respect to the intent requirement, however, aiding and abetting liability requires "a state of mind extending to the entire crime." Id. at 1248. Thus, as applied in the context of § 924(c), the defendant must know that one of his confederates will carry

a gun "at a time [he] can do something with it—most notably, opt to walk away." Id. at 1249-50. Ultimately, the Rosemond Court vacated the defendant's § 924(c) conviction, because the district court's instructions to the jury permitted the jury to find the defendant guilty without a finding that the defendant had advance knowledge of the firearm. Id. at 1251-52. The Court also recognized that where a defendant continues to participate in a crime after a gun is displayed or used by a confederate, a jury may permissibly infer that a defendant has advance knowledge. Id. at 1250 n.9.

### 2. Procedural Default

Because petitioner failed to raise the claim he now asserts under Rosemond on direct review, he is in procedural default as to that claim. While he has overcome the time bar imposed by § 2255(f)(1), he must also overcome the procedural default by showing cause and actual prejudice, or that he is actually innocent of the conviction(s) he challenges. Bousley, 523 U.S. at 622.

To show actual innocence, petitioner must show that it is more likely than not that no reasonable juror would have convicted him. United States v. Jones, 758 F.3d 579, 583 (4th Cir. 2014). To show cause and prejudice, petitioner must demonstrate (1) the existence of cause for a procedural default that turns on something external to the defense; and (2) actual prejudice resulting from the errors of which he complains. United States v. Pettiford, 612 F.3d 270, 280 (4th Cir. 2010).

### a. Actual Innocence

First, petitioner argues that he is actually innocent of Count Five, which charges that petitioner committed a § 924(c) violation through aiding and abetting.[3] Count Five involved the March 25, 1989, drive-by shooting of Mr. Alexander, which has been described in greater detail above. According to the evidence at trial, Mr. Alexander was shot during a drive-by that involved multiple cars and numerous gang members. At trial, the victim only mentioned Cecil Jackson as one of the actual shooters; however, before the Grand Jury, Mr. Alexander placed petitioner at the scene of the drive-by-shooting, as follows:

> He had gave me a $500 package and he – and when I told him the vice had came and how we ran different ways and I didn't have his money, he paid this dude $200 short where I was at, and him, Cecil, Orin[,] Antonia Cunningham and Eric Whitener and three girls and Stacy, Cecil's girlfriend, had came off – they came about five cars deep, Cecil took out an Uzi and shot my friend in the – in the foot down here and one of them shot me in the butt with a .25.

Respondent's Conforming[4] Exhibit 2 (#16) at 2 (errors in the original).[5] While Mr. Alexander did not specifically point to petitioner being present at the drive-by shooting at trial, the evidence of his presence at the scene taken before the Grand Jury can be

---

3   Petitioner was charged with 14 counts of using or carrying a firearm during and in relation to a drug-trafficking offense and aiding and abetting the same, in violation of 18 U.S.C. §§ 924(c) and 2 (Counts Five, Eighteen, Twenty-Two, Twenty-Four through Twenty-Six, Twenty-Eight, Twenty-Nine, and Thirty-One through Thirty-Five). Of those 14 aiding and abetting counts, defendant was convicted of all except Count 18.

4   While the court notes petitioner's further objection to consideration of such portion of a transcript, the court finds that the respondent has substantially complied with the court's earlier instruction concerning conforming such exhibit, which was originally annexed to the Response. Indeed, such exhibit indicates who was testifying, the person taking the testimony, and the date and place of the testimony. It is further supported by the Certificate of the court reporter.

5   The court has unsealed such portion of the Grand Jury testimony in furtherance of this court's substantial interest in reaching a just result.

considered by this court in making its actual innocence inquiry. In Bousley, supra, the Supreme Court specifically held, as follows:

> the Government is not limited to the existing record to rebut any showing that petitioner might make. Rather, on remand, the Government should be permitted to present any admissible evidence of petitioner's guilt even if that evidence was not presented during petitioner's plea colloquy.

Bousley, 523 U.S. at 624.

Petitioner's self-serving Declaration that he was not at the scene of drive-by shooting does not, however, amount to "new evidence" and does not create a genuine issue of material fact requiring a hearing. While the court has carefully considered petitioner's Declaration and weighed it with all the other evidence, the "actual innocence" exception that allows courts to consider defaulted habeas corpus claims is not a catchall that allows petitioners to retry a case or present evidence that they could have presented at trial. See Jones, supra. Indeed, such a Declaration is not sufficient to carry petitioner's burden of showing actual innocence. McCray v. Vasbinder, 499 F.3d 568, 573 (6th Cir.2007) (holding that a habeas petitioner's self-serving affidavit that he is innocent is insufficient to establish his actual innocence so as to toll the limitations period), cert. denied, 552 U.S. 1192 (2008). Clearly, petitioner could have testified to the very facts he now asserts in his Declaration.

In McQuiggin v. Perkins, ___ U.S. ___, 2013 WL 138773 (2013), the Court held that petitioners who miss the one-year cutoff for seeking federal habeas relief under the AEDPA can still have their constitutional claims heard if they convince the district court that no reasonable juror would find them guilty after hearing new evidence of their "actual innocence." The court has closely reviewed the trial excerpts from the Joint Appendix, Mr. Alexander's excerpted Grand Jury

testimony, and given some consideration to petitioner's Declaration (with the caveat discussed above) as well as his legal arguments. Having considered all such evidence, the court concludes that petitioner has not satisfied his burden of showing that is more likely than not that no reasonable juror would have convicted him of the offense alleged in Count Five, even under the narrower definition of aiding and abetting provided under Rosemond.

In addition, the totality of the evidence presented at trial indicates that at the time of the March 1989 shooting of Mr. Alexander, petitioner remained not just a member of the conspiracy, but a key player in the "enforcement" arm of the gang his brother and cousin ran. Under the "Pinkerton Doctrine," see Pinkerton v. United States, 328 U.S. 640 (1946), "a defendant is 'liable for the substantive offenses committed by a co-conspirator when their commission is reasonably foreseeable and in furtherance of the conspiracy.'" United States v. Blackman, 746 F.3d 137, 141 (4th Cir. 2014) (quoting United States v. Dinkins, 691 F.3d 358, 384 (4th Cir. 2012)). As the Fourth Circuit explained, "[t]he idea behind the Pinkerton doctrine is that the conspirators are each other's agents; and a principal is bound by the acts of his agents within the scope of the agency." United States v. Aramony, 88 F.3d 1369, 1379 (4th Cir. 1996). Thus, "so long as the partnership in crime continues, the partners act for each other in carrying it forward." Pinkerton, 328 U.S. at 646. The Fourth Circuit has also explained that while Pinkerton liability is analogous to aiding-and-abetting liability insofar as Pinkerton liability "merely represents an alternative form of vicarious liability," Pinkerton liability suffices to support a defendant's conviction, even where the quantum of proof on an aiding-and-abetting theory may be lacking. Blackman, 746 F.3d at 141.

Thus, even if the aiding-and-abetting aspect of Count Five were found to be lacking – which it clearly is not -- petitioner remains liable for the substantive offenses committed in the

drive-by-shooting of Mr. Alexander by a co-conspirator as the commission of such was reasonably foreseeable and in furtherance of *this* conspiracy. Id. The government's evidence "clearly demonstrated that [petitioner] not only joined the alleged conspiracy, but that the use of a firearm was both reasonably foreseeable to him and in furtherance of the goals of the conspiracy." Blackman, 746 F.3d at 141-42. Based on all the evidence presented, a reasonable juror could conclude that petitioner was aware of the firearm that triggered the charge, as well as its use to further the objectives of the drug-trafficking conspiracy through a Pinkerton analysis. The court again concludes that petitioner has not satisfied his burden of showing that it is more likely than not that no reasonable juror would have convicted him. Jones, 758 F.3d at 583. Thus, petitioner has not shown actual innocence.

Finally, in a supplemental argument found in his amended petition, petitioner also argues that he is actually innocent of Count Five because, under Rosemond, the predicate drug trafficking conspiracy cannot support multiple § 924(c) convictions. Petitioner reads too much into Rosemond, which this court cannot read as in any manner disturbing United States v. Camps, 32 F.3d 102 (4th Cir. 1994), which has long held that multiple § 924(c) sentences may be imposed based on a single drug-trafficking-conspiracy serving as the predicate offense. Id. at 107-08. This reading also makes common sense as to read Rosemond in the manner petitioner suggests would also require finding that after committing one gun crime in furtherance of the conspiracy, conspirators could commit additional gun offenses in furtherance of that conspiracy without fear of additional penalty. Such a result would not only be absurd, it would *encourage* gun violence.

b.     **Cause and Prejudice**

Having not been able to present arguments or evidence of actual innocence, petitioner has also argued that cause and prejudice would excuse his default. This argument focuses on the jury instructions given in 1990, which petitioner now contends are erroneous under Rosemond. To show actual prejudice as a result of an error in the jury instructions concerning an element of a crime, a petitioner must show that the erroneous jury instruction "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimension." United States v. Frady, 456 U.S. 152, 170 (1982) (emphasis in original). Petitioner argues that, because it would have been futile in 1990 for him to have argued against the sufficiency of the aiding and abetting instruction, he has shown "cause" that would excuse the procedural default.

The Court of Appeals for the Fourth Circuit has, however, held otherwise. Futility does not establish cause that would excuse a procedural default. Whiteside v. United States, 775 F.3d 180 (4th Cir. 2014) (*en banc*) (noting that "alleged futility cannot serve as 'cause' for a procedural default in the context of collateral review"). Thus, petitioner has not shown cause. As for actual prejudice, the court's resolution of petitioner's claim of actual innocence also prevents petitioner from showing actual prejudice.

**ORDER**

**IT IS, THEREFORE, ORDERED** that petitioner's Motion to Vacate, Set Aside, or Correct Sentence (#1), as amended, is **DISMISSED WITH PREJUDICE**.

**Denial of Certificate of Appealability**

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this court declines to issue a certificate of appealability as petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484–85 (2000) (in order to satisfy § 2253(c) when court denies relief on procedural grounds, a petitioner must demonstrate both that the dispositive procedural ruling is debatable, and that the petition states a debatable claim of the denial of a constitutional right).

Signed: October 23, 2015

Max O. Cogburn Jr
United States District Judge