**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:90-cr-85-MOC-DCK**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| ORRIN JACKSON, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Defendant Orrin Jackson's Motion for

Compassionate Release/Reduction of Sentence. (Doc. Nos. 236, 242). Jackson is represented by

Matthew Pruden. The Government has responded in opposition to the motion.

This Court is presented with a petition seeking relief from a long sentence of

incarceration. To be clear, this is not a case where someone was wrongfully accused and

convicted. Nor does it involve an unfair sentence. Defendant was part of a violent street gang

that distributed drugs, shot people, intimidated citizens, and tried to bribe a juror. They went to

trial and showed no remorse. The sentences given were lawful and the 18 U.S.C. § 924(c)

charges were made consecutive according to the law at the time. Defendant and his

coconspirators have served over thirty years. Normally that would be the end of the matter. But

changes to the law allow this Court to review the motion for compassionate release, based upon a

number of factors, to decide whether these defendants should be released at this time. The Court

will do its analysis below. However, granting relief today in no way criticizes the original

prosecution and sentencing.

## I. BACKGROUND

**A. Defendant's Conviction and Sentence Based on Stacking of Section 924(c)**

**Offenses**

Between 1998 and 1990, Jackson participated in a highly disciplined and violent drug trafficking organization in Charlotte, North Carolina. (Case No. 3:90CR85, Presentence Report at ¶ 5). Members of the conspiracy sold crack cocaine and used and carried assault rifles, shotguns, Uzis, and destructive devices and developed a reputation for violence. (Id.). Jackson was a street dealer within the organization and carried a firearm while trafficking in controlled substances on at least four occasions between March of 1989 and January of 1990. (Id. at ¶ 6). When Jackson committed his offenses, he had previously been convicted of misdemeanor larceny. (Id. at ¶ 20). He was 21 years old when he was arrested. (Id. at p. 1).

A federal grand jury indicted Jackson and charged him with conspiracy to possess with intent to distribute at least 50 grams of crack cocaine, 21 U.S.C. §§ 841(a)(1), 846; two counts of possessing with intent to distribute crack cocaine, 21 U.S.C. § 841(a)(1); and 14 counts of using and carrying a firearm during and in relation to the drug-trafficking conspiracy offense, 18 U.S.C. § 924(c). (WDNC Case No. 3:15CV106, Doc. 27-1 at 1–7, 11–18). The fourteen section 924(c) offenses were alleged to have occurred on four different dates. (See id.).

Jackson's case was tried by a jury, and the Government dismissed one of the Section 924(c) firearm offenses. (WDNC Case No. 3:90CR85, Judgment at 1). The jury found Jackson not guilty of one Section 924(c) firearm offense and one of the substantive drug-trafficking offenses. (Id.). This Court's probation office submitted a presentence report and determined that the Sentencing Guidelines called for a sentence of between 360 months and life in prison for the drug-trafficking offenses, based on a total offense level of 40 and a criminal-history category of

III.  (Id., Presentence Report at ¶ 26).

When Jackson was sentenced, the law allowed the government to charge defendants with multiple violations of Section 924(c) based on a single underlying conspiracy offense.  In addition, if convicted of multiple Section 924(c) counts that were charged in a single indictment, the sentencing court was required to sentence the defendant to five years' imprisonment for the first conviction, and then sentence the defendant to twenty years' imprisonment for each subsequent conviction, all of which were required to run consecutive to one another.

In alignment with the law at that time, the probation office, therefore, grouped the Section 924(c) firearm offenses based on date, resulting in one, mandatory consecutive term of five years in prison and three mandatory consecutive terms of 20 years in prison.  (Id. at ¶¶ 27–34).  This Court, therefore, in accordance with then-existing law, sentenced Jackson to 400 months in prison for the drug-trafficking offenses, and to a consecutive 780 months in prison for the Section 924(c) offenses, for an aggregate sentence of 1,180 months in prison.  (Id., Judgment at 2; id., Doc. No. 167 at 2).

**B.  Legal Changes Regarding Stacking of Section 924(c) Offenses**

Beginning in the late-1980s and throughout the 1990s, Circuit Courts of Appeal around the country examined the first stacking issue mentioned in the above paragraph (charging multiple Section 924(c) violations based on a single underlying offense).  The majority of Circuit Courts of Appeal that addressed the issue held that separate Section 924(c) charges must be based on separate predicate offenses; i.e., multiple Section 924(c) counts could not be based on a single drug conspiracy charge.  See, e.g., United States v. Anderson, 59 F.3d 1323, 1334 (D.C. Cir. 1995) (en banc); United States v. Lindsay, 985 F.2d 666, 672 (2d Cir. 1993); United States

v. Privette, 947 F.2d 1259, 1262–63 (5th Cir. 1991); United States v. Sims, 975 F.2d 1225, 1233–36 (6th Cir. 1992); United States v. Cappas, 29 F.3d 1187, 89 (7th Cir. 1994); United States v. Fontanilla, 849 F.2d 1257, 1258–59 (9th Cir. 1988); United States v. Moore, 958 F.2d 310, 312–14 (10th Cir. 1992); and United States v. Hamilton, 953 F.2d 1344, 1346 (11th Cir. 1992). The Fourth Circuit was in the minority of circuits that adopted the contrary approach. See United States v. Camps, 32 F.3d 102 (4th Cir. 1994); see also United States v. Edwards, 994 F.2d 417, 423–24 (8th Cir. 1993).

While the Supreme Court did not address the circuit split, the Department of Justice did. In 1999, James K. Robinson, who was Assistant Attorney General at the time, issued a memorandum (the Robinson Memorandum) instructing United States Attorney's Offices to follow the majority approach and base each separate Section 924(c) count upon a separate predicate offense. Jackson did not receive the benefit of this adjusted practice.

**C. This Court's Subsequent Reduction of Jackson's Sentence under the Sentence Guideline Amendments**

This Court twice reduced Jackson's drug-trafficking sentence under retroactive Sentencing Guideline amendments, and he is now serving an aggregate sentence of 968 months in prison. (Id., Doc. No. 167 at 2; id., Doc. No. 179). The probation office reports that Jackson has 421 months of credited time in the Bureau of Prisons ("BOP") and three disciplinary infractions from 1995. Jackson has completed more than 100 educational and work programs. Jackson is currently incarcerated at Butner Medium II Federal Correctional Institution. He has been in federal custody for more than 30 years, since the age of 21, and has been incarcerated for his offense conduct for more than 31 years, since the age of 20. He is now about to turn 52-

years-old and his current projected release date is April 26, 2059, which would be approximately one month after his 90th birthday.

### D. Pending Motion for Compassionate Release

In March and June of 2020, Jackson submitted a request for compassionate release based on the extraordinary length of his sentence because of stacked Section 924(c) sentences that he would not receive if he were sentenced today and based on his rehabilitative efforts.  (Id., Doc. 242-1 at 4–5; Gov't Ex. 2 at 2).  It does not appear that the warden of his BOP facility has acted on Jackson's request.  Jackson now asks this Court to grant him compassionate release and a sentence to time-served.

### II.     DISCUSSION

By its terms, 18 U.S.C. § 3582(c)(1)(A) permits the Court to reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  § 3582(c)(1)(A)(i).  As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction.  United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

Section 603(b) of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), amended 18 U.S.C. § 3582(c)(1)(A) to permit a defendant to seek a modification of his sentence for "extraordinary and compelling reasons," if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the

warden of the defendant's facility, whichever is earlier."  Before the First Step Act amended

Section 3582(c)(1)(A), a court could only act to reduce a defendant's sentence for extraordinary

and compelling reasons if the BOP filed a motion seeking that relief.

Before the First Step Act was enacted, the Sentencing Commission issued a policy

statement addressing motions for reduction of sentences under Section 3582(c)(1)(A).  The

policy statement, found in U.S.S.G. § 1B1.13, provides that a court may reduce the term of

imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and

compelling reasons warrant the reduction"; (ii) "the defendant is not a danger to the safety of any

other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (iii) "the reduction is

consistent with this policy statement."  U.S.S.G. § 1B1.13.  The policy statement includes an

application note specifying the types of medical conditions that qualify as "extraordinary and

compelling reasons."  The application note also sets out various conditions and characteristics

that qualify as "extraordinary and compelling reasons" related to the defendant's age and family

circumstances.[1]  U.S.S.G. § 1B1.13, cmt. n.1(B)-(C).

In December 2020, the Fourth Circuit Court of Appeals held in United States v. McCoy

that the policy statement is not binding on courts deciding compassionate release motions

---

[1]  These include (1) a terminal illness; or (2) a serious physical or medical condition, a serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he is not expected to recover. U.S.S.G. § 1B1.13 cmt. n.1(A).  A defendant's age may also warrant compassionate release, if (1) the defendant is at least 65 years old, (2) is experiencing a serious deterioration in physical or mental health because of the aging process, and (3) has served at least 10 years or 75% of his term of imprisonment, whichever is less.  Id., § 1B1.13 cmt. n.1(B).  Congress has made clear that rehabilitation of the defendant alone "shall not be considered an extraordinary and compelling reason" for a modification.  28 U.S.C. § 994(t).

because U.S.S.G. § 1B1.13 was enacted before the First Step Act. 981 F.3d 271 (4th Cir. 2020). Specifically, the Fourth Circuit held that the policy statement found in U.S.S.G. § 1B1.13 does not apply to compassionate release motions brought by inmates under 18 U.S.C. § 3582(c)(1)(A)(i). Id. at 281–83. The McCoy Court reasoned that, because Section 1B1.13 applies only to motions brought by the BOP, it cannot be the policy statement applicable in circumstances where defendants bring their own motions for compassionate release. Id. In place of the no-longer-applicable policy statement, McCoy permits "courts [to] make their own independent determinations of what constitutes an 'extraordinary and compelling reason[ ]' under § 3582(c)(1)(A), as consistent with the statutory language[.]" Id. at 284.

The First Step Act also amended 18 U.S.C. § 924(c), removing the possibility that a defendant will receive "stacked" section 924(c) sentences by requiring that the mandatory-minimum sentence that applies for a second or successive Section 924(c) conviction applies only "when a prior § 924(c) conviction arises from a separate case and already "has become final." First Step Act § 403(a), 132 Stat. at 5222. That change, however, does not apply retroactively to sentences imposed before December 21, 2018, the effective date of the First Step Act. Id. § 403(b).

In McCoy, the Fourth Circuit held that district courts are not limited to the grounds for compassionate release identified in Section 1B1.13 and that a district court may "treat[] as [an] 'extraordinary and compelling reason[]' for compassionate release the severity of the [defendant's] § 924(c) sentences and the extent of the disparity between the [defendant's] sentences and those provided for under the First Step Act." 981 F.3d at 286. The McCoy Court reasoned that "the First Step Act's clarification of § 924(c) resulted in not just any sentencing

-7-

change, but an exceptionally dramatic one" that made stacked Section 924(c) sentences, such as

the aggregate sentence that Jackson is now serving, significantly longer "'than what Congress

has now deemed an adequate punishment for comparable § 924(c) conduct.'" Id. (quoting

United States v. Redd, 444 F. Supp. 3d 717, 723 (E.D. Va. 2020)).  With regard to cases

involving pre-First Step Act stacked Section 924(c) sentences, the McKoy court noted "two

distinct features" of such sentences that warranted the application of the "extraordinary and

compelling reasons" standard: (1) the "sheer and unusual length of the sentences[,]" and (2) the

"gross disparity between those sentences and the sentences Congress now believes to be an

appropriate penalty for the defendants' conduct."  Id.  The Court ultimately affirmed the

reductions to four defendants' sentences under the First Step Act.  Each defendant had received a

lengthy sentence due to having multiple Section 924(c) sentences stacked prior to the enactment

of the First Step Act.

  Following Mckoy, it is clear that the court must make an individualized determination

that the defendant has identified an extraordinary and compelling reason for compassionate

release, considering, for example, the length of time already served, any rehabilitative efforts

made during the defendant's time in the BOP, the defendant's prior criminal history, and the

defendant's age when he committed his offenses.  See id.  It also clear, after McKoy, that

although the policy statement found in U.S.S.G. § 1B1.13 remains useful guidance in

considering motions for compassionate release, the court has the discretion to consider other

facts that may constitute "extraordinary and compelling reasons," including that the particular

defendant was given stacked sentences under Section 924(c).

  For the same reasons the sentence reductions were appropriate for the defendants in

McCoy, a sentence reduction is appropriate, and warranted, for Jackson.  First, Jackson was indicted before the Robinson Memorandum, discussed above.  Had he been indicted after the Robinson Memorandum was issued, he would have faced only one Section 924(c) sentence.  Having never been convicted previously of violating Section 924(c), Jackson would have been sentenced to five years for his 924(c) conviction, to run consecutive to his sentence on the drug charges.  Thus, his total sentence would be 248 months, approximately a quarter of the sentence he is now serving, and he would have been released from prison several years ago.

Second, even if Jackson could be sentenced for the multiple § 924(c) counts of conviction (in his case, the four separate groupings), a sentence consistent with the First Step Act's clarification regarding Section 924(c) stacking would still result in a substantially reduced sentence.  His aggregate sentence for the Section 924(c) convictions would be twenty years, resulting in a total sentence of 428 months.  Having served 85% of that sentence, he would be released from the BOP by now.

Defendant also argues that there are additional considerations with regard to Jackson's sentence that weigh in favor of granting his motion for compassionate release.  That is, Jackson argues that his sentence would have been shorter had he been sentenced after changes to criminal history calculations under the United States Sentencing Guidelines and changes in North Carolina's own sentencing laws, and he goes into great detail in his memorandum explaining how the changes in federal and state laws would have impacted his sentence.  Of course, most defendants who have been incarcerated for several decades could argue the same--i.e., that the federal and state sentencing laws have changed over the years that the defendant would be subject to a lesser sentence now.  Thus, this Court does not consider this single factor as a highly

compelling reason to reduce Defendant's sentence, but the Court has considered it, nonetheless, in its extraordinary and compelling reason analysis.

The Court does find as compelling grounds for a sentence reduction the fact of Jackson's institutional record and his rehabilitation. Jackson's prior criminal history consists of a single misdemeanor offense, and Jackson was only 21 years old when he was arrested for these offenses. The record shows that Jackson has made the most of his time while serving his sentence. He has an exemplary institutional record and has taken many steps to rehabilitate himself. For instance, O'Neal Walker, former National Diversity Management Administrator for the Human Resource Management Division for the BOP, provided a letter in 2002, stating that Jackson "has conducted himself in an excellent manner" while serving his sentence and provided details regarding his positive activity while in prison. He concluded the letter by stating, "It is my clinical opinion as a licensed psychologist that Orrin will continue to comport himself in a manner consistent with the norms, values, and principals of an 'open' society, if given such an opportunity…. I believe he is ready for another chance."[2]

Tia Patrick, Drug Abuse Program Coordinator, provided a letter discussing Mr. Jackson's participation in Psychology Services. The letter mentions that Jackson was a member of the Suicide Watch Cadre, through which he assisted potentially suicidal inmates. It states that "the job required significant responsibility and dedication and Jackson fulfilled this job successfully…. Jackson was viewed as mature and responsible. He displayed a pleasant and caring attitude toward others and had a pro-social out-look."[3]

---

[2] See (Def. Ex. D).
[3] See (Def. Ex. E).

In another letter by Rita Burwell, Correctional Program Specialist/Mentor Coordinator at Butner, states that Jackson "is diligent and determined to take advantage of every opportunity and all resources available to aid him in his re-entry success."[4]  In yet another letter, Oliver Muhammad, Staff Chaplain at Butner, states that he is "impressed with the thirst for knowledge that Jackson has and his desire to see other inmates learn the knowledge of themselves to improve their lives."[5]  Muhammad adds: "Jackson has changed in [] multiple ways.  He has developed into a natural motivational speaker and teacher.  I have observed his character being strengthened by an ever-growing moral conscience.  With my endorsement, he has assisted numerous inmates in developing a sense of self-knowledge through study of a variety of books on history, sociology, and anthropology.  Jackson's cathartic prison experience has prepared him to take the wisdom and disciplined learned back to his family, community, and society in general."

Dave Elsea, Industrial Specialist for UNICOR (Federal Prison Industries), provided a letter praising Jackson's work ethic and productivity.[6]  R.P. Smith, Assistant Supervisor of Education at Butner, provided a letter, praising Jackson's "outstanding level of institutional conduct, overall positive mental attitude and willingness to consistently work to better himself by taking full advantage of the Vocational and Educational courses at FCI Butner, North Carolina." Smith was particularly impressed by Jackson's "commitment to help motivate and assist other inmates in achieving General Equivalency Diplomas (GED) as a GED tutor."  Smith added that

---

[4] See (Def. Ex. F).
[5] See (Def. Ex. G).
[6] See (Def. Ex. H).

"the example set by his efforts demonstrate the level of growth and maturity that I have found rare in this environment and in my opinion very commendable."[7]

B. Stubbs, Facilitator for the Transitions of Inmate Mentoring Program at Butner, also provided a letter, explaining that the success of the mentoring program "was due in large part to [Jackson]'s sincerity and eagerness to share the positive results of changing perspectives and internal reflection."[8]  Also attached to Jackson's motion are his Inmate History Work Detail,[9] his Inmate Education Data Transcript,[10] and numerous certificates showing the substantial amount of programs and courses Jackson has completed to better himself.[11]  In addition, Jackson's disciplinary record shows that he was disciplined only three times between the time he began serving his sentence in the BOP and April 2020, and all of those incidents occurred in 1995.[12]

The Court further finds as compelling that fact that Jackson has provided the Court with an impressive plan for his re-entry into society.  That is, he has registered for re-entry assistance from The Center for Community Transitions, which is willing to work with him upon release.[13]  He has also been taken in as a client of Project B.O.L.T., a nonprofit organization dedicated to helping previously incarcerated people re-enter society.[14]  He has also taken steps during his time in prison to prepare for re-entering the community.[15]  Jackson indicates that, upon release, he

---

[7]  <u>See</u> (Def. Ex. I).
[8]  <u>See</u> (Def. Ex. J).
[9]  <u>See</u> (Def. Ex. K).
[10]  <u>See</u> (Def. Ex. L).
[11]  <u>See</u> (Def. Ex. M1-M37).
[12]  <u>See</u> (Def. Ex. N).
[13]  <u>See</u> (Def. Ex. P).
[14]  <u>See</u> (Def. Ex. Q).
[15]  <u>See</u> (Def. Ex. R and S).

plans to live with his sister, Bernita Jackson, until he is able to support himself.[16]

The Court further finds that Jackson has presented compelling evidence indicating that he presents no danger to the community.  Jackson did not have an extensive record before his charges in this case, and he was extremely young when he committed the instant offenses and was taken into custody.  At 51-years-old, he has now been in custody for over 31 years, during which time he has taken great steps to educate himself, rehabilitate himself, and prepare for re-entry into the community.   Moreover, since his sentencing, the sentencing laws and policies with regard to Section 924(c) stacking have changed, and Defendant has provided persuasive evidence to this Court showing that he himself has changed.  Furthermore, the Court finds as laudable that, at the hearing on Jackson's motion, Jackson did not attempt to downplay or make excuses for his past criminal behavior.  Rather, he appeared to genuinely accept responsibility for his actions as well as the fact that the sentence he has already served was just and appropriate, given his crimes.  The Court finds, however, that there is simply no additional benefit to be achieved by incarcerating Jackson for 38 more years.

In sum, under the First Step Act, Section 924(c) convictions can no longer be stacked to create excessive sentences like the one imposed in this case.  That fact, coupled with Jackson's personal history, characteristics, and rehabilitation, constitute extraordinary and compelling reasons to grant relief.  This Court therefore grants Defendant's motion compassionate release and sentences him to time-served.

**ORDER**

---

[16]  See (Def. Ex. T).

-13-

**(1) IT IS, THEREFORE, ORDERED** that Defendant's Motion for Compassionate Release (Doc. Nos. 236, 242) is **GRANTED**, and the Court hereby orders that Defendant's term of imprisonment is reduced to **TIME SERVED**.

**(2) IT IS FURTHER ORDERED** that, upon release from imprisonment, Defendant shall be placed on supervised release for a term of five years. While on supervised release, Defendant shall not commit another federal, state, or local crime and shall comply with the standard conditions that have been adopted by this Court, which the Court has reviewed, and which the Court finds are appropriate.

**(3) IT IS FURTHER ORDERED** that Defendant shall not contact any of the witnesses from his underlying criminal case, or the witnesses' families, without the specific approval from his probation officer.

**(4)** Defendant is therefore **ORDERED** released from the custody of the United States Bureau of Prisons and/or the custody of the U.S. Marshals Service. To allow the Bureau of Prisons/United States Marshal/Pretrial Service adequate time, such are allowed up to ten days to comply with this order.

**(5)** The Clerk of Court shall certify copies of this Order to the U.S. Bureau of Prisons, U.S. Marshals Service, and the U.S. Probation and Pretrial Services Office.

.

Signed: June 1, 2021

Max O. Cogburn Jr.
United States District Judge